BELSOME, J.,
Dissents with Reasons.
| ^Defendants Patín and Thomas have been in State custody for nearly nine years without a trial.[1] Under any circumstance, a delay that is approaching nine years is presumptively prejudicial. In this case, the State’s inexcusable delay and negligence resulted in actual prejudice to Defendants, and therefore, the trial court’s grant of Defendants’ motions to quash must be affirmed. Therefore, I dissent.
| ¡.The Sixth Amendment guarantees that “[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial.... ” The United States Supreme Court firmly established that a delay of eight years is presumptively prejudicial, and ultimately found that such a delay violated the defendant’s Sixth Amendment right to *44 a speedy trial. Doggett v. U.S., 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). While Doggett is not procedurally identical to Defendants’ case, it is analogous nonetheless, considering both eases involve a presumptively prejudicial delay of a speedy trial right. Most significantly, the defendant in Doggett was not subjected to pretrial detention, as Defendants Patin and Thomas were in this case.
In Doggett, defendant Marc Doggett was arrested for federal drug charges eight and a half years after his indictment. Doggett, 505 U.S. 647, 112 S.Ct. 2686, 2689; Kenneth M. Altman, Doggett v. United States: Giving the Speedy Trial Claimant a Presumptive Helping Hand, 39 Loy. L.Rev. 213 (1993). Although he had been originally indicted in February 1980, Doggett left the country before the Drug Enforcement Agency could arrest him. Doggett, 505 U.S. at 648-49, 112 S.Ct. at 2689.
Unaware that Doggett had re-entered the country in 1982, the DEA had discontinued their attempts to locate him, and as a result, he lived undetected in the United States, where he had married, earned a college degree, worked and lived openly under his own name. Id. After a credit check on individuals with outstanding warrants by the Marshal’s Service, Doggett was discovered and arrested six years later, in September 1988.[2] Id. Applying Barker v. Wingo, the Court found that the eight and a half year delay violated Dog-gett’s right to a speedy trial. Doggett, 505 U.S. at 650, 112 S.Ct. at 2690.
In applying the Barker factors to Dog-gett’s case, the Court recognized that such an inquiry involved four separate questions: “whether delay before trial was |3uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay’s result.” Doggett, 505 U.S. at 651, 112 S.Ct. 2686 (citing Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101).[3] In determining whether the delay “has crossed the threshold dividing ordinary from ‘presumptively prejudicial’ delay,” the Court noted that “the presumption that pretrial delay has prejudiced the accused intensifies over time.” Doggett, 505 U.S. at 652, 112 S.Ct. at 2691 (emphasis added).
Turning to the second factor, the Government’s role in the delay, the Court disagreed with “the Government’s claims [that it] sought Doggett with diligence, as no serious effort was made to search for Doggett for six years”. Id. The Court held that “[w]hile the Government’s lethargy may have reflected no more than Doggett’s relative unimportance in the world of drug trafficking, it was still findable negligence, and the finding stands.” Doggett, 505 U.S. at 653, 112 S.Ct. 2686. The Court also found that the third factor, the assertion of the right to a speedy trial, also weighed completely in Doggett’s favor, as he had no knowledge of the charges until his arrest. Id.
Thus, the Court was left to address the fourth factor and the only remaining argument by the Government: “that Doggett fail[ed] to make out a successful speedy trial claim because he was not shown pre *45 cisely how he was prejudiced by the delay between indictment and trial.” Doggett, 505 U.S. at 654, 112 S.Ct. at 2692. The Court observed “that unreasonable delay between formal accusation and trial threatens to produce more than one sort of harm, including ‘oppressive pretrial incarceration,’ ‘anxiety and concern of the accused,’ and ‘the possibility that the [accused’s] defense will be impaired’ by dimming memories and loss of |4exculpatory evidence.” Id. (quoting Barker, 407 U.S., at 532, 92 S.Ct., at 2193; see also Smith v. Hooey, 393 U.S. 374, 377-379, 89 S.Ct. 575, 576-578, 21 L.Ed.2d 607 (1969); United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 776, 15 L.Ed.2d 627 (1966)). The third type of harm, the loss of exculpatory evidence, is the most serious of the harms, “because the inability of a defendant to adequately prepare his case skews the fairness of the entire system.” Id.; Barker, 407 U.S. at 532, 92 S.Ct. 2182 (emphasis added).
Rejecting the Government’s argument that Doggett failed to demonstrate that the delay “weakened his ability to raise specific defenses, elicit specific testimony, or produce specific items of evidence,” the Court held that “consideration of prejudice is not limited to the specifically demonstrable, and ... affirmative proof of particularized prejudice is not essential to every speedy trial claim.” Doggett, 505 U.S. at 655, 112 S.Ct. 2686 (citing Moore v. Arizona, 414 U.S. 25, 26, 94 S.Ct. 188, 189, 38 L.Ed.2d 183; Barker, supra, 407 U.S., at 533, 92 S.Ct., at 2193). Additionally, “Barker explicitly recognized that impairment of one’s defense is the most difficult form of speedy trial prejudice to prove because time’s erosion of exculpatory evidence and testimony ‘can rarely be shown.’” Doggett, 112 S.Ct. at 2692-93 (quoting Barker, 407 U.S., at 532, 92 S.Ct., at 2193). Although the passage of time can undeniably prejudice either side, “one cannot generally be sure which of them it has prejudiced more severely.” Id. (citing Barker, 407 U.S. at 521, 92 S.Ct. at 2187). Therefore, the Court determined that “we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify.” Doggett, 505 U.S. at 655, 112 S.Ct. at 2693 (emphasis added).
|sThe Court acknowledged that pretrial delays are often unavoidable and also justified, and that “[b]etween diligent prosecution and bad-faith delay, official negligence in bringing an accused to trial occupies the middle ground.”[4] Id. at 656-57, 112 S.Ct. 2686. However, the Court found that the appeals court committed reversible error in finding that the Government’s negligence in bringing an accused to trial was “automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him.” Id. at 657, 112 S.Ct. 2686. “Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused’s defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun.” Id. (emphasis added). Likewise, the weight assigned to official negligence “compounds *46 over time as the presumption of evidentia-ry prejudice grows.”[5] Id.
The Court noted that “[cjondoning prolonged and unjustifiable delays in prosecution would both penalize many defendants for the state’s fault and simply encourage the government to gamble with the interests of criminal suspects assigned a low prosecutorial priority.” Id. Indeed, “persistent neglect in concluding a criminal prosecution indicates an uncommonly feeble interest in |fibringing an accused to justice; the more weight the Government attaches to securing a conviction, the harder it will try to get it.” Id. at 2693-94 (emphasis added). Thus, factors such as negligence in prosecuting the case must be considered when weighing the Barker factors because “such circumstances must rest with the government rather than the defendant.” Barker, 407 U.S. at 531, 92 5.Ct. 2182.
In conclusion, the Court found that when the Government’s negligence resulted in a delay that was six times longer[6] than that which generally triggers judicial review, “and when the presumption of prejudice, albeit unspecified, is neither extenuated, as by the defendant’s acquiescence, nor persuasively rebutted, the defendant is entitled to relief.” Id. (citing Barker, 407 U.s. at 534-36, 92 S.Ct., at 2194-2195).[7]
*47 As previously noted herein, the procedural posture of Defendants in these cases actually presents a stronger case for actual prejudice than the defendant in Doggett, as Doggett “was subjected to a lengthy post-indictment delay but did not suffer any recognizable impairment of liberty.” Altman, supra, 39 Loy. L.Rev. at 221. Furthermore, the State, through the District Attorney’s office, plainly controlled these proceedings from their inception,[8] and elected to join Patin and Thomas as co-defendants. Although vested with the authority to sever the trials, |7the State repeatedly failed to do so, year after year, while Defendants remained in State custody.[9] This official negligence on the part of the State has compounded with each passing year, along with the increasingly strong presumption of irreparable eviden-tiary prejudice.[10] See Doggett, 505 U.S. at 657, 112 S.Ct. 2686.
Barker recognized that certain factors may weigh more heavily than others. Barker, 407 U.S. at 533, 92 S.Ct. at 2193. This writer would find that, with regard to the first factor, the prejudice from the extraordinary delay of nearly nine years is indisputably presumed, and is weighted heavily against the State.
With regard to the second factor, considering the multitude of delays that were a direct result of the failure to sever the trials, this factor arguably weighs in favor of neither the State nor the Defendants.[11] *48 As this Court found in State v. Harris, which involved only a two year delay, “[t]he State’s dilatory pattern in pursuing this matter ... is disturbing.” State v. Harris, 2003-0524, p. 7 (La.App. 4 Cir. 9/10/03), 857 So.2d 16, 20 (emphasis added).[12] Ultimately, the State controlled the proceedings in this matter, as the State is vested with the authority to determine when to bring cases to trial. See La. C.Cr.P. art. 61. The ^majority specifically acknowledged that the State’s questionable decision to bring McCormick to trial first had a direct and detrimental effect on the length of the delay in bringing Thomas and Patin to trial. Contrary to the majority’s position, an additional showing that the State did something more than what has been addressed previously herein to hinder the speedy trial right of Thomas and Patin is unnecessary. This Court must engage in “a difficult and sensitive balancing process” with regard to the Barker factors, with different weights assigned to different reasons. Barker, 407 U.S. at 531, 92 S.Ct. 2182, 33 L.Ed.2d 101. This writer finds that the exorbitant delay of almost nine years and the undeniable prejudice suffered by Thomas and Patin must be assessed significantly more weight than the reason for the delay, and those factors alone tip the balance in favor of Defendants and against the State.
Additionally, the Supreme Court has specifically held that the failure of an accused to object to continuances does not mean the speedy trial right has not been violated:
We do not hold that there may never be a situation in which an indictment may be dismissed on speedy trial grounds where the defendant has failed to object to continuances. There may be a situation in which the defendant was represented by incompetent counsel, was severely prejudiced, or even cases in which the continuances were granted ex parte.
Barker, 407 U.S. at 536, 92 S.Ct. at 2195 (emphasis added).
Furthermore, it must be noted that the trial court, as the impartial arbiter in this case, cannot entirely escape culpability. The trial judge had a duty to manage the court’s docket to provide Defendants due process. The trial court, like the district attorney, is considered to be a State actor. Vermont v. Brillon, — U.S. -, 129 S.Ct. 1283, 1291 (2009). Nevertheless, the trial court permitted four attorneys to | ¡¡withdraw their representation, and witnessed the repeated delays, year after year, while the case languished and Thomas and Patin remained in State custody.
Although the Supreme Court has stated that assigned counsel is not generally considered a state actor for purposes of a speedy-trial claim, the Court also held that “the general rule attributing to the defendant delay caused by assigned counsel is not absolute.” Brillon, 129 S.Ct. at 1292. The delay caused by the condition of the ODP after Hurricane Katrina or “institutional problems” may or may not have been the “breakdown in the public defender system” that the Supreme Court envi *49 sioned could be charged to the State. Id. at 1292-1293. However, considering the Court’s pointed acknowledgement that there may be circumstances in which delay attributed to assigned counsel is not rightfully charged to the defendant, this writer finds that the instant case presents such a scenario. Justice demands that the delays attributed to the lack or withdrawal of counsel for either Thomas or Patin cannot rightfully be attributed to Defendants, and Defendants’ assigned counsel are arguably State actors under these particular facts and circumstances. See id.
With respect to the third factor, Defendants have asserted their speedy trial right.[13]
The fourth factor, prejudice, “should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect.” Barker, 407 U.S. at 532, 92 S.Ct. 2182. As previously noted herein, three such interests are preventing oppressive pretrial incarceration, minimizing the accused’s anxiety, and, most significantly, limiting the possibility that the accused’s defense will be impaired. Id. “If witnesses die or disappear during a delay, the prejudice is obvious.” | m Id. (emphasis added).[14] Prejudice is also obvious where “defense witnesses are unable to recall accurately events of the distant past.” Id. (emphasis added). “Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.” Id. (emphasis added). In this case, the loss of memory has been shown by the Defendants and is affirmatively reflected in numerous instances within the record. Furthermore, the loss of memory is only one of several forms of prejudice suffered by Defendants.
In this case, Defendants established several forms of actual prejudice. Jai Williams, a critical alibi witness, is missing. Defendants have asserted that Ms. Williams, a store employee at Lake Forest Plaza Mall, would have testified that she saw Thomas and Patin at the mall several times on December 23, 2001. Jerry Reed, the original investigator on the case who interviewed Ms. Williams soon after Patin turned himself in, is deceased. Additionally, Detective Thomas Redmann,[15] the only person who spoke to victim Malcolm Green, can no longer recall any details of the December 23, 2001 conversation he had with Mr. Green. The police reports, which contain the information gathered by Det. Redmann from Mr. Green, do not refresh Det. Redmann’s memory and are inadmissible hearsay. Mr. Green is now deceased. Crystal Placide, the mother of Patin’s three children and a witness for Patin, has been missing since 2007.[16] Indi *50 viduals who called 911 on the date of the incident are unable to be located by investigators.[17]
No DNA or other physical evidence exists in this case; eyewitnesses and the recollections of individuals involved in the case are crucial. This is not merely 11 , speculative loss of evidence, but actual, proven loss of critical eyewitness testimony and recollections by investigators, and is indisputably actual prejudice pursuant to Doggett, supra. While the a delay on the part of the State in bringing Defendants to trial is not “automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him,” Defendants in this case have exhibited countless examples of actual prejudice as a result of the delay.
Furthermore, in the context of Louisiana law, this Court has determined that a 24-month delay violated a defendant’s right to a speedy trial. State v. Harris, 2003-0524, p. 7 (La.App. 4 Cir. 9/10/03), 857 So.2d 16, 20. In Harris, this Court recognized that a 24-month delay was presumptively prejudicial, and noted that nine continuances were at the State’s request, one was at the defendant’s request, and numerous others were not attributable to either party. Id. Five of the State’s consecutive continuances were a result of the failure in securing police officers’ presence in court to testify. Harris, 857 So.2d at 20. Turning to the third Barker factor, the Court found that the defendant never objected to any of the continuances, but did file a speedy trial motion approximately four months after the bill of information was filed. Id.
With regard to the fourth factor, prejudice to the defendant, this Court acknowledged that there were no facts in the record regarding the defendant other than evidence that he was charged with heroin possession and incarcerated from June 19, 2000, through January 11, 2001. Id. The defendant in Harris was not incarcerated form the last two years of hearings, but had to come back to court twelve times. Id. “The record [was] silent as to hardship that he suffered or witnesses that he lost as a result of the [24-month] delay.” Id. (emphasis added). We held that the defendant’s speedy trial right was violated, and affirmed the judgment granting the defendant’s motion to quash the bill of information. Id.
| iaSimilarly, this Court found that a defendant’s speedy trial right was violated in a two and a half year delay without trial. State v. Esteen, 95-1079 (La.App. 4 Cir. 4/3/96), 672 So.2d 1098, 1102. In Esteen, the defendant was charged with possession of marijuana with intent to distribute and being a convicted felon in possession of a firearm. Id. at 1101. This Court recognized that a delay of two and a half years was presumptively prejudicial. Id. The case was reset twenty-two times during the two and a half year period. Id. Finding that the State and the trial court itself were responsible for a majority of the delays,[18] this Court held that the defendant *51 had been actually prejudiced by the delay,[19] and affirmed the judgment granting the motion to quash the two oldest charges against the defendant. Id. at 1102.
Likewise, in State v. Leban, this Court affirmed a judgment quashing the bill of information after a sixteen-month delay, finding that the defendant’s speedy trial right was violated. State v. Leban, 611 So.2d 165 (La.App. 4th Cir.1992). Noting that the delay was presumptively prejudicial, this Court considered the Barker factors, and without specifically determining whether the defendant was prejudiced 11sby the delay, found that taking all the factors into consideration, the judgment granting the motion to quash was proper.[20] Leban, 611 So.2d at 169.
Finally, in State v. Firshing, this Court affirmed a trial court’s judgment granting a motion to quash the bill of information on speedy trial grounds after a presumptively prejudicial seventeen-month delay. State v. Firshing, 624 So.2d 921 (La.App. 4th Cir.1998). In Firshing, this Court applied the Barker factors to the facts of the case, noting that with regard to prejudice suffered by the defendant as a result of the delay, defendant asserted that “he has had to appear in court repeatedly and to retain counsel for this protracted litigation.” Firshing, 624 So.2d at 926. Defen *52 dant also maintained that “he ha[d] been deprived of the ability to present the live testimony of two witnesses to events having a direct bearing on the issues of the trial.” Id. at 926-27.
In contrast the length of the delay at issue in Harris, Esteen, Leban, and Firshing, supra, Defendants in this case have suffered a delay that is more than four times the presumptively prejudicial delay in Harris. Furthermore, Defendants have been incarcerated for the entirety of the delay. Finally, as discussed herein, Defendants have plainly demonstrated that they have suffered actual prejudice as a result of the delay.
In addition to suffering actual prejudice to their defense, Defendants have also suffered numerous other unquantifíable harms as a result of the nearly nine-year delay. The Supreme Court has recognized numerous detrimental | ^repercussions suffered by an accused who is incarcerated for a lengthy period while awaiting trial:
We have discussed previously the societal disadvantages of lengthy pretrial incarceration, but obviously the disadvantages for the accused who cannot obtain his release are even more serious. The time spent in jail awaiting tidal has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time. Moreover, if a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense. Imposing those consequences on anyone who has not yet been convicted is serious. It is especially unfortunate to impose them on those persons who are ultimately found to be innocent. Finally, even if an accused is not incarcerated prior to trial, he is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility.
Barker, 407 U.S. at 532-33, 92 S.Ct. at 2193 (footnotes omitted)(emphasis added).[21]
Applying Doggett, Barker, and Louisiana jurisprudence to the facts of this case, this writer finds that the Defendants in this case have established actual prejudice. As the majority acknowledges, Barker is a balancing test, conducted by a reviewing court ad hoc, while not necessarily assigning equal weight to all factors. Barker, supra. Defendants have been and continue to be subjected to oppressive pretrial incarceration; they have undeniably suffered and continue to suffer anxiety and concern; and their defenses have indisputably been impaired by the exorbitant delay. See Barker, 407 U.S. at 532, 92 S.Ct. 2182.
Considering the deplorable delay in this case, the State’s lethargy in bringing the Defendants to trial, and, most significantly, Defendants’ demonstration of actual prejudice, this writer finds that the facts of the case weigh most heavily in |1Kfavor of Defendants, and the trial court properly granted the motions to quash.[22] The *53 “amorphous quality” of an accused’s right to a speedy trial “leads to the unsatisfactorily severe remedy of dismissal of the indictment when the right has been deprived.” Barker, 407 U.S. at 522, 92 S.Ct. at 2188. I respectfully dissent.

. Thomas has been in jail since January 5, 2002, when he was arrested, and charged with a crime that occurred on December 23, 2001. Patin turned himself in to the New Orleans Police Department on December 26, 2001, and was charged on December 27, 2001.

. Doggett had no knowledge of the charges until his arrest. Doggett, 505 U.S. at 653, 112 S.Ct. at 2691.

. The Speedy Trial Clause of the Sixth Amendment protects three main interests: (1) "to prevent oppressive pretrial incarceration;” (2) "to minimize anxiety and concern of the accused;" and (3) “to limit the possibility that the defense will be impaired.” Altman, supra, 39 Loy. L.Rev. at 216-217 (quoting Barker, 407 U.S. at 532, 92 S.Ct. 2182).

. In Doggett, "[t]he Government concede[d] ... that Doggett would prevail if he could show that the Government had intentionally held back in its prosecution of him to gain some impermissible advantage at trial.” Doggett, 505 U.S. at 656, 112 S.Ct. at 2693. The Supreme Court agreed, recognizing that "Barker stressed that official bad faith in causing delay will be weighed heavily against the government, 407 U.S., at 531, 92 S.Ct., at 2192, and a bad-faith delay the length of this negligent one [eight years] would present an overwhelming case for dismissal.” Id. (emphasis added).

.Author Kenneth M. Altman recognized that Doggett’s Ending of a presumption that a lengthy delay is prejudicial to the defense increased speedy trial rights for an accused:
The presumption that extraordinary delay is prejudicial to the defense furthers two sound policies. First, this presumption solidifies existing precedent that recognizes prejudice as an independent concern of the Speedy Trial Clause. This cementing of precedent clarifies the distinction between the Due Process Clause and Speedy Trial Clause. The Due Process Clause mainly protects against a deprivation of liberty caused by governmental bad faith, while the Speedy Trial Clause encompasses broader concerns, including the prevention of prejudicial delay.
The second and more fundamental policy supported by the Court's analysis is that the Speedy Trial Clause provides substantial protection to the constitutional rights of the accused. The Doggett holding requires that once the Speedy Trial Clause is triggered by accusation or arrest, courts must presume an increasingly prejudicial effect of negligent prosecutorial delay, even though actual prejudice may be difficult to prove. The Court's broad reading of the Speedy Trial Clause effectively prevents prosecutors from substantially delaying a trial without a valid reason. This interpretation results in greater individual rights for the accused than were present under prior law. Thus, courts are now provided with a more useful standard in determining whether a delay in prosecution was excessive.
Altman, 39 Loy. L.Rev. at 228-29 (footnotes and citations omitted).

. Doggett found that courts have generally determined that postaccusation delay is presumptively prejudicial "at least as it approaches one year." Doggett, supra, at n. 1 (emphasis added). The Court also acknowledged that it had previously considered delays shorter than six years "extraordinary.” Doggett, 505 U.S. at 658, 112 S.Ct. 2686.

. One author reached the following conclusion regarding the implications of Doggett:
With Doggett, the majority has sent a strong message to the Government: if the Government is going to formally accuse or restrain an individual, it must follow through and promptly attempt prosecution. Otherwise, the Government risks dismissal of the charge. Although dismissal of the charge is an admittedly drastic remedy, it highlights the importance that the Supreme Court attaches to the fair, prompt administration of criminal justice. The Court's commitment to protecting the constitutional rights of the accused is to be applauded. Some may criticize the Court for releasing a wrongdoer on technical grounds; however, such critics must realize that constitutional rights are for the protection of all citizens. While it may be true, as the dissenters wrote, that "odd facts make odd law,” it is *47 equally true, as the majority intimated, that stale indictments beget dismissal.
Altman, supra, 39 Loy. L.Rev. at 230 (footnotes omitted).

. Article 61 of the Louisiana Code of Criminal Procedure provides, in the section entitled "District Attorney; Powers and Duties” that "the district attorney has entire charge and control of every criminal prosecution instituted or pending in his district, and determines whom, when, and how he shall prosecute.” La.C.Cr.P. art. 61 (emphasis added).

. Patin argues that the state could have elected to try him separately on June 20, 2005, and notes that the state had already determined it would try McCormick separately. Furthermore, Patin asserts that the State could have tried him separately on November 13, 2006, another date upon which counsel for Patin announced ready for trial, but Thomas was without counsel.

. This Court and the Louisiana Supreme Court have recognized that delays of less than two years are presumptively prejudicial. See, e.g., State v. Kitchens, 2009-0834, 35 So.3d 404 (La.App. 4 Cir. 3/24/10)(a 19 month delay was presumptively prejudicial, but defendant failed to show actual prejudice because alleged loss of exculpatory evidence was speculative); State v. Cutno, 2009-0560, — So.2d -, 2010 WL 184430 (La.App. 4 Cir. 1/20/10)(a 20 month delay was presumptively prejudicial, but the Court found presumptive prejudice inapplicable because defendant was responsible for most of the delays; additionally, defendant did not show actual prejudice); State v. Ervin, 2008-1078 (La.App. 4 Cir. 4/1/09), 9 So.3d 303 (delay of 25 months was presumptively prejudicial); State v. Scott, 2004-1142 (La.App. 4 Cir. 7/27/05), 913 So.2d 843 (delay of three years between the filing of the bill of information and trial was noted as a "significant” delay, but found that several factors beyond the Defendant and the State’s control attributed to delay, and no delays by the State were designed to hamper the defense); State v. Causey, 2002-1858 (La.App. 4 Cir. 4/9/03), 844 So.2d 1076 (delay of four years did not violate speedy trial right where defendant was not incarcerated and reason for delay was defendant's failure to appear in court); State v. Larkins, 1997-2898 (La.App. 4 Cir. 2/18/98), 707 So.2d 1331 (delay of 26 months was presumptively prejudicial).

.Thomas asserts that at most, only three trial delays are attributable to him. Thomas argues that four delays are attributable to Patin (April 20, 2004, June 17, 2004, March 11, 2005, and November 5, 2007), and five to the State (four trial continuances, and the State then chose to proceed on another case on July 27, 2009). Patin asserts that he has not moved for a continuance of trial for six years (since June 17, 2004), and that Patin’s counsel did not join in a motion to continue since January 21, 2005. Patin also asserts *48 that of twenty-five trial settings, only five were continued on motion of his counsel or joint motion of his counsel and the state. Patin further asserts that three trial settings were continued on the motion of counsel for Thomas, or on the joint motion of Thomas and the State (March 28, 2005, June 20, 2005, and November 13, 2006). Patin asserts that he announced ready for trial on June 20, 2005, but counsel for Thomas requested a continuance. Finally, Patin argues that after 2005, delays attributed to him are only because he did not have an attorney. The parties requested joint continuances on January 30, 2004 and January 21, 2005.

. See detailed discussion of State v. Harris, infra.

. Thomas asserted a handwritten speedy trial motion on February 22, 2005 with this Court in error, which was transferred to the trial court on March 8, 2005, and Patin asserted his on June 14, 2005 by filing a Motion for Speedy trial with this Court, which this Court instructed the trial court to consider as an article 701 motion.

. The Barker Court ultimately held that Barker’s speedy trial right was not violated; however, in marked contrast to the instant case, "there [was] no claim that any of Barker's witnesses died or otherwise became unavailable owing to the delay,” and Barker was out on bond for most of the delay, spending ten months in jail. Barker, 407 U.S. at 534, 92 S.Ct. at 2194. The Court further held that the record strongly suggested that Barkér "hoped to take advantage of the delay in which he had acquiesced.” Id.

. As the majority notes, Det. Redmann no longer works for the New Orleans Police Department.

. Janet Hutson and Kerry Deichmann, both investigators with the Baton Rouge Capital Conflict Office, testified regarding the failed attempts to locate Crystal Placide.

. As the majority has acknowledged, Janet Hutson testified that never before has she had such difficulty interviewing witnesses and investigating an incident. Ms. Hutson further testified that residents of apartment complex where the shooting took place have relocated in the past eight years, and that the apartment manager advised her that virtually every tenant living in the apartment complex did not live there in December 2001.

. The Esteen Court noted:
Clearly, the court .itself and the State were responsible for most of the delays. In the original case, the trial was continued twice by motion of the State (on December 9, 1992, and January 14, 1993). In February 1993, after almost ten months without proceeding to trial, the original case was nolle prosequied and the prosecution on the original charges was reinstituted in conjunction with a third charged offense. Another ten *51 months elapsed with no trial and when the case was called to trial on November 22, 1993, the State requested a further délay which was denied by the trial court. This denial was circumvented by the State's action in nolle prosequing the charges for a second time and instituting a new prosecution for the third time on the charges arising out of the defendant’s March 1992 arrest.
State v. Esteen, 672 So.2d at 1101. The defendant did not object to any of the continuances. Id.

. The Esteen Court articulated the following prejudice suffered by the defendant as a result of the delay:
Finally, Esteen has clearly been prejudiced by the delay. He has been jailed three times and has spent eleven months incarcerated since the State filed its original bill of information. In addition, his defense is now seriously hampered by the death of Golbert Ellsworth, the defense’s primary witness, who died on July 2, 1994. Ells-worth was the owner of the property where Esteen was originally arrested and, according to the defense’s brief, was willing to testify that Esteen was employed by Ells-worth as a certified nursing assistant, that Esteen cared for Ellsworth in that capacity and that Esteen did not live at the address where he was arrested and was not responsible for anything on the premises. This testimony is relevant in that Esteen was originally charged with possession of marijuana and firearms which were found during a search pursuant to an arrest at the home of Ellsworth.
State v. Esteen, 672 So.2d at 1102.

. The Leban court explained its reasoning for finding that the defendant’s speedy trial right had been violated:
Taking all of the Barker factors into consideration, it appears that the trial court was correct in granting the motion to quash. The majority of the continuances were at the request of the State, and the final two continuances were granted because the State did not have its witnesses for trial which makes the present case more like [State v.] Reaves, [376 So.2d 136 (La.1979)] than [State v.] Lollis, [521 So.2d 532 (La.App. 4th Cir.1988)] and [State v.] Cowger, [581 So.2d 283 (La.App. 5th Cir.1991)]. Moreover, the fact that the State had yet to identify a witness it had known about for several months led to the final delay, that of the State’s entering the nolle prosequi and reinstituting prosecution. The State had more than ample time to find out this witness’ name and address. An additional consideration is the concern voiced by the trial judge that it would not be fair to a defendant to allow the State to reinstitute prosecution after dismissing a bill of information because the judge denied the State *170 a continuance. Considering all of the circumstances, the trial judge did not err in granting defendant's motion to quash.
State v. Leban, 611 So.2d 165, 169-170 (La.App. 4th Cir.1992).

, The Barker Court noted that' '[i]n Klopfer v. North Carolina, 386 U.S. 213, 221-222, 87 S.Ct. 988, 992-993, 18 L.Ed.2d 1 (1967), we indicated that a defendant awaiting trial on bond might be subjected to public scorn, deprived of employment, and chilled in the exercise of his right to speak for, associate with, and participate in unpopular political causes.” Barker, 407 U.S. at n. 33.

. Although dismissal "is indeed a serious consequence because it means that a defendant who may be guilty of a serious crime will go free, without having been tried,” dismissal is, simply put, "the only possible remedy” for *53 a speedy trial violation. Barker, 407 U.S. at 522-23, 92 S.Ct. 2182, (footnote omitted).
Additionally, this Court has recognized that a trial court's judgment on a motion to quash is reviewed under the abuse of discretion standard. State v. Harris, 2003-0524, p. 4 (La.App. 4 Cir. 9/10/03), 857 So.2d 16, 18 (citing State v. Love, 2000-3347 (La.5/23/03), 847 So.2d 1198, 1206). "Thus, for this court, the proper approach to the question of whether a defendant’s right to a speedy trial was violated is not merely a review of the dates and circumstances of the pleadings, but an examination of the entire record in order to discern whether there was ‘palpable abuse’ on the part of the trial court in granting the motion to quash.” Id.